1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

RANDY ANTHONY SCALES,

Petitioner,

vs.

CHARLES HARRISON, Warden,

Respondent.

CASE NO. 05cv1940-LAB (JMA)

**ORDER ADOPTING REPORT AND RECOMMENDATION TO DISMISS HABEAS PETITION**

Petitioner Randy Anthony Scales ("Scales"), a state prisoner proceeding through counsel with a 28 U.S.C. § 2254 habeas petition ("Petition"), challenges his conviction of first degree robbery after a jury trial in San Diego County Superior Court. As summarized in Magistrate Judge Jan M. Adler's Report and Recommendation ("R&R"), he received an enhancement for use of a deadly weapon (knife) in the commission of the robbery, and the trial court found true Scales had five serious felony convictions, two prior prison terms, and nine prior "strike" convictions. He was sentenced to 51 years to life in prison.

The Petition challenges Scales' confinement as a violation of his rights under the United States Constitution in three particulars. Ground One asserts he was denied his Sixth Amendment right of confrontation when the trial testimony of the Spanish-speaking victim was not fully translated into English. Ground Two asserts the trial court erred in ruling that illegal immigration is not an act of

moral turpitude for impeachment purposes and excluding that evidence.  Ground Three asserts his Fifth Amendment right to remain silent was violated when the prosecutor elicited testimony of Scales' purportedly post-<u>Miranda</u> silence.  Judge Adler's thorough R&R recommends Scales' Petition be denied with prejudice.  Scales' counsel filed timely Objections to the R&R.  For the reasons discussed below, the Objections are **<u>OVERRULED</u>**, the R&R is **<u>ADOPTED</u>**, and the Petition is ordered **<u>DISMISSED WITH PREJUDICE</u>**.

## I.    LEGAL STANDARDS

### A.    <u>Reports And Recommendations</u>

A district judge "may accept, reject, or modify the recommended decision" on a dispositive matter prepared by a magistrate judge proceeding without the consent of the parties for all purposes. FED.R.CIV.P. ("Rule") 72(b); *see* 28 U.S.C. § 636(b)(1).  The district court "shall make a *de novo* determination upon the record . . . of any portion of the magistrate judge's disposition to which specific written objection has been made. . . ." <u>Id.</u>;  <u>United States v. Raddatz</u>, 447 U.S. 667, 676 (1980) (the court must make a *de novo* determination of the factual findings to which there are objections).  The court also reviews *de novo* the magistrate judge's conclusions of law.  <u>Gates v. Gomez</u>, 60 F.3d 525, 530 (9th Cir. 1995).

### B.    <u>Federal Habeas Claims By State Prisoners</u>

Title 28 United States Code § 2254(a) sets forth the scope of review for federal habeas claims: "The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Section 2254 habeas proceedings measure state convictions against federal constitutional requirements applicable to the states, and only errors of federal constitutional magnitude will support federal intervention in state judicial proceedings to correct such errors.  *See* <u>Oxborrow v. Eikenberry</u>, 877 F.2d 1395, 1400 (9th Cir. 1989); <u>Jackson v. Ylst</u>, 921 F.2d 882, 885 (9th Cir. 1990). Errors of state law cannot support federal habeas corpus relief, and federal courts may not reexamine state court determinations on state law issues.  <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991) (a state's interpretation

/ / /

of its laws or rules provides no basis for federal habeas corpus relief because no federal constitutional question arises).

Federal courts review petitions for habeas relief from state prisoners filed in federal court after April 24, 1996 under the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Lindh v. Murphy, 521 U.S. 320, 327 (1997). A writ petition subject to AEDPA standards will not be granted unless the state court decision adjudicating a claim on the merits is "contrary to or involved an unreasonable application of" federal law as that law has been determined by the United States Supreme Court. *See* Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "unreasonable application" clause, the test is objective unreasonableness, irrespective of whether the decision was "erroneous" or "incorrect." Williams v. Taylor, 529 U.S. 362, 411 (2000); Lockyear v. Andrade, 538 U.S. 63, 75-76 (2003). A federal reviewing court must presume that a determination of a factual issue made by a state court is correct. 28 U.S.C. § 2254(e)(1). Petitioners have "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(2).

## II.    BACKGROUND

Scales' prosecution arose from an early-morning incident in August 2001. Hector Quiroz, the eventual robbery victim, went to an apartment to buy marijuana with a woman, Kim Bryant, he met late at night at a restaurant. Bryant and another woman at the apartment had a beer with Quiroz in the kitchen and offered to have sex with him for $30 while they waited for the marijuana to be delivered. Quiroz told them he had only $10, which he had given to Bryant for the drugs. The women left the

room, then Scales and another man appeared.  Scales retrieved a kitchen knife and brandished it, telling Quiroz he needed to pay them in order to have sex with the women.  Quiroz repeated he had only $10 with him.  Scales had Bryant search Quiroz and, after forcing him to remove some of his clothing, they found and took $110 from him.  Scales let Quiroz leave.  He ran from the apartment, flagged down a police officer.  Using gestures, he communicated he had been robbed at knifepoint. He ultimately offered conflicting versions in subsequent interviews of how he came to be in the apartment and the number of people involved in the incident, among other things.

The R&R sets forth the facts and procedural background of this case through extensive quotations from the California Court of Appeal's statements of the underlying facts, that court's identification of the pertinent evidence presented at trial, and the testimonial excerpts of record challenged in Scales' Petition.  In his Objections, Scales expressly "adopts the Magistrate Judge's procedural and factual summary," except as noted in his Objections arguments.  Obj. 1:10-11.  This court does not reproduce the undisputed excerpts of record, except insofar as necessary to address Scales' objections "to the unreasonable inferences drawn from the state appellate court's factual determinations in order [for the R&R] to conclude that the state appellate court decision was not contrary to clearly established Supreme Court law" and to the purportedly "unreasonable application of those factual determinations to established Supreme Court law."  Obj. 1:11-14.

## III.    DISCUSSION

### A.    Ground One:  Untranslated Testimony

Quiroz testified at Scales' trial in Spanish, using a translator.  Scales represents five of his jurors understood both English and Spanish.  He contends that on six occasions, Quiroz  -- "the prosecution's star witness" and robbery victim -- responded to the prosecutor's narrow question with "rambling answers which were not fully translated."  Pet. p. 6.  Scales characterizes those instances as violations of his Sixth Amendment right to confront the witness because his counsel was precluded from cross-examination on the untranslated portions of Quiroz's trial testimony and argues those portions of the testimony should not have been admitted.

The record reflects the trial court expressly acknowledged the non-responsive nature of the portions of Quiroz's answers when he continued to speak after giving a responsive answer, an implicit

- 4 -

05cv1940

1  sustaining of the defense objection.  The court also admonished Quiroz to confine his answers to the

2  narrow question asked:

3          Q:  When the money was take from you, were you afraid?

4          A:  Yes.  (Witness continues speaking in Spanish, uninterpreted.)

5          [Defense Counsel]:  Your Honor, same objection. the question has been asked and
           answered.
6
           The Court:  Yes, the answer is "yes."  Everything else would be nonresponsive. [¶]
7          Another question please.
           . . .
8
           Q:  When you left, did you have both of your shoes?
9
           A:  Yes, as I was leaving -- (Witness continues speaking in Spanish, uninterpreted.)
10
           [Defense Counsel]:  Objection, your Honor, nonresponsive, except for the answer,
11         "yes."

12         The Court:  Yes, the question was, "Did you have both of your tennis shoes," and then
           you answered it "yes."  [¶] The problem that we are having is that if there is further
13         explanation that is needed about what is going on, the lawyer needs to ask you a
           question about it.  So when a question is asked, like how may shoes did you have, if
14         the answer is "two," you need to say that and no explain to us all of the situation as to
           how you got the shoes and when you got the shoes and what kind of shoes they were
15         and any other information. Okay? [¶] So listen to the question, please, and answer that
           question directly.
16         . . .

17         [Prosecutor]:  Where did he follow you to?

18         A:  Toward the street.

19         Q:  And how long --

20         A:  With a weapon.

21         Q:  And how long did he -- excuse me.

22         A:  With the weapon, I don't know whether -- (Witness continues speaking in Spanish,
           uninterpreted.)
23
           [Defense Counsel]:  Objection, your Honor.  Nonresponsive.  Move to strike.
24
           The Court:  The answer has not been translated into English, and it is nonresponsive
25         because he had answered the initial question, and is, again, elaborating on his answer.
           [¶] Mr. Quiroz, I would ask you, again, please, to simply answer the question, and the
26         attorney will ask you additional questions if more information is needed.

27         [Prosecutor]:  Now, you ran from the apartment and you got back on University
           Avenue.  Did you flag down a police officer?
28

1      A:  Yes.  (Witness continues speaking in Spanish, uninterpreted).

2      The Court:  See, the problem is that the answer would be yes, and then everything else you are going to be volunteering information, and we are going to have an objection.

3

    So if we can just please say "yes" or "no" when the question calls for a "yes" or "no" answer, it will be easier for all of us.

4

5  R&R 5:16-7:3.[1]

6      The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right

7  . . . to be confronted with the witnesses against him."  The state appellate court acknowledged that an

8  interpreter's complete failure to translate some of a witness' testimony can implicate the defendant's

9  Sixth Amendment right to confront witnesses against him at trial:  "The clause 'has long been read as

10  securing an adequate opportunity to cross-examine adverse witnesses,'" citing <u>United States v. Owens</u>,

11  484 U.S. 554, 557 (1988).  That court concluded on these facts:

12      [W]hile some of Quiroz's statements were left untranslated, he nevertheless took the stand, was present for the jury to assess his demeanor, was subject to cross-examination and indeed was vigorously cross-examined by [Petitioner's] counsel, [with "every opportunity to inquire into Quiroz's untranslated explanations. . . ."]  These circumstances tend to negate any confrontation clause violation.

13

14

15

16  R&R 8:9-14.

17      The appellate court further concluded, even assuming Scales' "confrontation rights were

18  violated by the court's admission of isolated instances of Quiroz's untranslated testimony," and even

19  assuming Scales "did not waive" that constitutional issue for appeal "by his failure to object on those

20  grounds in the trial court," nevertheless "the error would have been harmless."  R&R 8:15-18.

21  Applying the harmless beyond a reasonable doubt standard of <u>Chapman v. California</u>, 386 U.S. 18

22  (1967), the court of appeal determined that in consideration of the entirety of Quiroz's testimony, "the

23  portions of Quiroz's untranslated testimony elicited during his direct examination were

24  inconsequential," as were "the two brief instances of untranslated testimony that occurred during

25  Quiroz's cross-examination, where Quiroz briefly spoke without translation after the court sustained

26  the prosecutor's objections to [Scales]'s counsel's question."  R&R 8:27-9:3.  The state reviewing court

27

28      [1]  Citations to the R&R in this Order, unless otherwise noted, are quotations extracted from the state appellate court opinion, Doc. No. 2, Exh. A.

1   rejected Scales' argument those instances cannot be found harmless because Quiroz's credibility was

2   "critical" to resolution of the case. The court found he failed to show how those brief, untranslated

3   portions of answers to questions relating to relatively insignificant details would bear on the credibility

4   of his testimony pertinent to the elements of the charged offense, or with respect to Quiroz's veracity

5   in general, especially in consideration of the ample indices of Quiroz's inconsistencies.  In reaching

6   its conclusion, that court considered defense counsel's emphasis to the jury of Quiroz's initial lies to

7   police and the discrepancies in his testimony, so that the jury was able to fully assess his weak

8   credibility yet still found for the prosecution, "militating against a finding of prejudice even under the

9   Chapman standard."  R&R 9:15-10:2.

10      Scales argues some jurors were bilingual or understood some Spanish, and therefore they may

11  have considered the untranslated testimony in reaching their verdicts.  The reviewing court noted the

12  trial court's admonishments during trial that the interpreter's English translation was the evidence in

13  the case, not any understanding an individual juror might have of the Spanish language, a point

14  repeated in a jury instruction.  In those circumstances, the state court concluded the guilty verdict was

15  "'surely unattributable to the [presumed] error,'" and any error with respect to incomplete translations

16  was "therefore harmless beyond a reasonable doubt," quoting Sullivan v. Louisiana, 508 U.S. 275, 279

17  (1993).  R&R 10:2-17.  Scales objects to the R&R recommendation this claim be denied and the state

18  court result be found neither contrary to nor an unreasonable application of United States v. Owens,

19  484 U.S. 554 (1987) (holding that the Confrontation Clause "is [not] violated by admission of a prior,

20  out-of-court identification statement of a witness who is unable, because of memory loss, to explain

21  the basis for the identification").[2]

22      Both sides relied on Owens for the applicable standard and in support of their divergent

23  positions on this issue.  The Owens Court reasoned that because the Confrontation Clause guarantees

24  only an *opportunity* for effective cross-examination, not *successful* cross-examination, the

25  _____

26      [2]  The court does not address those Objections which do not implicate the appropriate standard of
    federal habeas review. For example, Scales objects the state appellate court's "red herring claim that Petitioner's
27  attorney had the opportunity to seek a translation of Quiroz's testimony and failed to do so," purportedly
    "adopted" in the R&R in reliance on People v. Perez, 82 Cal.App.4th 760 (2000). Obj. p. 4. This court reviews
28  the state court results only to determine whether the result was contrary to or an unreasonable application of
    federal law as articulated by the United States Supreme Court, the AEDPA habeas standard.

1   constitutional rights of the defendant in that case were not violated when the assault victim, a prison

2   guard who had  suffered grave memory impairment as a result of the defendant's attack, could not

3   remember while testifying at trial seeing the face of his attacker, although he had previously identified

4   the defendant as his attacker.

> It is sufficient that the defendant has the opportunity to bring out such
> matters as the witness' bias, his lack of care and attentiveness, his poor
> eyesight, and even (what is often a prime objective of cross-
> examination . . .) the very fact that he has a bad memory.

8   Owens, 484 U.S. at 559.

9           Scales contends he did not have an adequate opportunity to confront Quiroz "on all aspects of

10  his trial testimony."  Obj. 5:7-8.  He distinguishes Owens on the facts and the condition of the

11  witnesses whose trial testimony was challenged.  While Owens is plainly distinguishable on its facts,

12  the principle reinforced in that case still cuts against Scales' position.  As traced by the court of appeal,

13  nothing prevented Scales' counsel from probing Quiroz's account of the material events surrounding

14  the charges.  Defense counsel had ample evidence and opportunity -- and used them -- to challenge

15  Quiroz's credibility, irrespective of the non-evidence portions of the brief, untranslated, unresponsive

16  "rambling" portions of a few answers.  See R&R pp. 7-10.

17          After de novo review of the pertinent portions of the record and the R&R to which Scales

18  objects, applying AEDPA standards, the court concludes it may not disturb the state court result on

19  his Ground One claim.  He fails to demonstrate that result was contrary to or an unreasonable

20  application of Supreme Court authority or an objectively unreasonable determination of the facts.

21          **B.      Ground Two:  Exclusion Of Immigration Status Evidence For Impeachment**

22          Scales' Petition Ground Two asserts his right of confrontation was violated when the trial court

23  precluded cross-examination of Quiroz about his immigration status for purposes of impeachment to

24  show moral turpitude.  He cites no authority for the inference he apparently would have the court draw,

25  that illegal entry into the United States is a per se act of moral turpitude.  He relies on Delaware v. Van

26  Arsdall, 475 U.S. 673 (1986) to argue exclusion of inquiry into Quiroz's immigration status was

27  prejudicial and erroneous, entitling him to relief under AEDPA.

28  / / /

Trial judges "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on defense counsel's inquiry into the potential bias of a prosecution witness." Van Arsdall, 475 U.S. at 679.  That latitude extends to the imposition of "reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Id. The Confrontation Clause does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Id., *quoting* Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (*per curiam*).

> In Chapman, this Court rejected the argument that all federal constitutional errors, regardless of their nature or the circumstances of the case, require reversal of a judgment of conviction.  The Court reasoned that in the context of a particular case, certain constitutional errors, no less than other errors, may have been "harmless" in terms of their effect on the factfinding process at trial. Since Chapman, we have repeatedly affirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.

Van Arsdall, 475 U.S. at 681, *citing* Chapman, 386 U.S. 18.

The state court of appeal concluded Scales' trial court did not err in excluding impeachment evidence of Quiroz's immigration status.  Even assuming he was an undocumented alien, he had had that status for 20 years with no criminal record, and neither state court accepted the premise undocumented alien status is indicative of dishonesty or lack of veracity, or amounts to conduct reflective of moral turpitude.  The court of appeal found no abuse of discretion in the exclusion of that evidence at trial, concluding that decision was not so arbitrary, capricious, or patently absurd as to result in a manifest miscarriage of justice.  R&R 14:18-20.

> The central issue for the jury's resolution was whether Quiroz was telling the truth when he testified about the offenses in question.  In assessing [Petitioner's] offer of proof, the court carefully undertook the appropriate relevance inquiry, namely whether, assuming Quiroz was illegally within the United States, the mere fact of his illegal immigration status entails dishonesty or other conduct demonstrating a willingness to be untruthful for personal gain.  We agree that illegal immigrant status does not, per se, reflect a pattern of deceit that would

///

///

1          be relevant to Quiroz's credibility given the variety of ways an
           undocumented person can enter the United States, including being
2          brought here as a child.

3     R&R 14:20-26.

4          The court of appeal observed the trial court did not expressly weigh the probative value of

5     Quiroz's immigration status against its prejudicial effect, but concluded such an analysis was implicit

6     in the ruling.  Quiroz had resided in this country for 20 years before the incident.  The extent of trial

7     counsel's arguments for admission of the impeachment evidence reinforced the time-consuming and

8     peripheral nature of any inquiry into Quiroz's immigration status at Scales' trial.  In order to determine

9     whether the alleged illegal entry into the United States involved some form of deception adequate to

10    meet impeachment evidence admissibility standards, the trial court determined the jury would have

11    to hear evidence on those facts and circumstances, causing not only delay in the trial of the charges

12    against Scales, but also injecting a highly prejudicial element associated with counsel's "fishing

13    expedition" into a remote and tangential issue whose probative value would not outweigh its

14    prejudicial effect.  Quiroz's testimony and his various versions of the facts surrounding the robbery

15    afforded the jury ample opportunity to assess his credibility.

16         The R&R recommends this court find the state court result on this issue is not contrary to nor

17    an unreasonable application of controlling Supreme Court authority, applying the review criteria

18    articulated in United States v. Beardslee, 197 F.3d 378, 383 (9th Cir. 1999) for determining whether

19    a petitioner's right of confrontation has been violated by the exclusion of evidence on cross-

20    examination.  Those considerations are:  whether "(1) the evidence was relevant; (2) there were other

21    legitimate interests outweighing the defendant's interests in presenting the evidence; and (3) the

22    exclusion of evidence left the jury with sufficient information  to assess the credibility of the witness.

23    The court concurs an application of those factors in these circumstances raises no Confrontation

24    Clause concern.

25         Scales is critical of the R&R failure to expressly apply Van Arsdale reasoning to this claim.

26    To constitute a constitutionally improper denial of a defendant's opportunity to impeach a witness for

27    bias, the ruling must be found not harmless beyond a reasonable doubt.  Van Arsdall, 475 U.S. at 680

28    (the correct inquiry is whether, assuming that the damaging potential of the cross-examination were

1   fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable

2   doubt).  The principles articulated in <u>Van Arsdale</u>, on facts wholly distinguishable with respect to the

3   timing and nature of the witness's motivation inferrable as bias (for example, charges were actually

4   pending against that defendant for recent infractions when he agreed to speak to the prosecution, and

5   those charges were dismissed thereafter), do not appear to this court offended by the exclusion of

6   Quiroz's immigration status as impeachment evidence in these circumstances.  Even were this court

7   to find constitutional error, which it does not, any such error was harmless on this record, and the state

8   court of appeal reached a reasonable conclusion precluding habeas relief under AEDPA.

9           Scales unpersuasively suggests some speculative inference Quiroz was biased by an

10  unsubstantiated suggestion the government may have promised him something related to consequences

11  of his immigration status in exchange for his testimony against Scales.  Unlike in <u>Van Arsdale</u>, the

12  basis for the exclusion of the impeachment evidence here relates to no "prototypical form of bias on

13  the part of the witness. . . . <u>Van Arsdale</u>, 475 U.S. at 680.  The remoteness of Quiroz's alleged illegal

14  entry into the United States, and the purely speculative suggestion he may have been promised

15  something by authorities in exchange for his testimony against Scales from which the jury might infer

16  bias, are wholly insufficient to defeat a finding the exclusion of that impeachment evidence was

17  harmless beyond a reasonable doubt.  The record shows the jury had ample opportunity to observe and

18  to assess Quiroz's credibility.   The state court's ruling on this theory is not contrary to nor an

19  unreasonable application of controlling Supreme Court authority, precluding habeas relief.

20          **C.    <u>Ground Three:  Prosecutorial Misconduct</u>**

21          The Petition Ground Three alleges the prosecutor violated Scales' Fifth Amendment rights by

22  eliciting testimony about his purportedly post-<u>Miranda</u> silence.  In particular:

23                  At trial, the prosecutor asked the arresting officer whether at the time
                    of his arrest, petitioner was agitated and "saying lots of things."  The
24                  officer responded in the affirmative.  The prosecutor asked whether the
                    officer gave petitioner an opportunity to explain what happened.  Over
25                  defense objection, the officer responded, "Yes."  The prosecutor then
                    asked:  "And did he tell you that . . . . someone had been an intruder in
26                  his house?"  The officer responded "No, he declined to talk to me."  At
                    sidebar, petitioner's counsel objected to the comments on petitioner's
27  / / /

28  / / /

1    silence after he invoked his Miranda rights.  The trial court overruled
2    the objection.  Later the jury requested a readback of the arresting officer's testimony.

3    Pet. p. 8.

4          In reviewing that claim, the state appellate court extracted extensive excerpts from the pertinent

5    trial testimony and described the sidebar conference, reproduced at R&R pages 19-22.  As that court

6    summarized, the trial court expressed concern that the prosecutor was getting "dangerously close" to

7    a possible Miranda violation by drawing comment on Scales' failure to speak, and foreclosed further

8    inquiry on the matter.  The prosecutor had explained she was inquiring about statements Scales was

9    making, not about his silence.  When the issue was revisited at the time the jury asked for a read-back

10   of that testimony, the court explained it had determined the prosecutor's questions were within the

11   legitimate scope of inquiry into *pre*-Miranda statements and ruled no corrections or redactions to the

12   record were necessary.  R&R 21:25-22:2.  The appellate court denied Scales' claim on this theory, in

13   reliance on Doyle v. Ohio, 426 U.S. 610 (1976).

14         The Doyle Court established it is a violation of due process to use an arrested person's post-

15   Miranda silence to impeach an explanation subsequently offered at trial.  However, "the Constitution

16   does not prohibit the use for impeachment purposes of a defendant's silence prior to arrest, or after

17   arrest if no Miranda warnings are given."  Brecht v. Abrahamson, 507 U.S. 619, 628 (1993) (citation

18   omitted).  The components of the violation are thus the trial court permitting the prosecutor's use of

19   a defendant's post-arrest silence for impeachment purposes, either by questioning or in closing

20   argument.  The R&R examines the parties' competing characterizations of the timing of the detective's

21   testimonial references to his interactions with Scales and recommends this court conclude the state

22   court's result should not be disturbed.

23         An objective test applies to determine whether a suspect is in custody.  Stansbury v. California,

24   511 U.S. 318, 324 (1994) (the relevant inquiry is how a reasonable person in the suspect's position

25   would have understood his situation).  This court's review is governed by the "unreasonable

26   determination" standard of 28 U.S.C. § 2254(d)(2) (*i.e.*, whether the conviction "was based on an

27   unreasonable determination of the facts in light of the evidence presented in the State court

28   proceeding"), a "daunting standard" for a federal petitioner to satisfy.  *See* Taylor v. Maddox, 366 F.3d

992, 999-1001 (9th Cir. 2004) (discussing the significant deference owed to state court factual findings and factfinding process). The prosecutor elicited testimony from a police officer witness that Scales declined the opportunity to explain what happened. Scales contends he should be deemed to have been under arrest at that time, although he stops short of affirmatively stating any formalities such as the reading of his rights had yet occurred, and that "declining to explain" should be construed as protected silence. He argues: "When police officers ignored Petitioner's directive that [they] leave his house and began searching his house, a reasonable person would believe that he or she was in police custody" (Obj. 15:17-19), then bootstraps that inference to argue: "After Petitioner was informed he was being arrested for robbery and after Petitioner refused to speak to the police, the clear pattern of the contested prosecutorial questions was to suggest that Petitioner's silence in response thereto was an admission of guilt." Obj.15:28-16:2. The parties dispute whether the prosecutor's inquiry was about events that occurred before or after Scales was arrested. Scales argues the state courts made "unreasonable findings" in concluding the sequence of events support a determination the prosecutor's inquiry was limited to Scales' statements or his silence occurring before his arrest.[3]

The pertinent portions of the arresting officer's testimony are extracted from Scales' trial record and reproduced in the R&R and reviewed therein under the proper legal authority. This court is convinced of the reasonableness of the state court factual findings the challenged testimony, insofar as it may be construed to describe the defendant's silence, occurred prior to arrest. The prosecutor examined Detective Williams regarding what happened when he entered Scales' apartment to investigate the robbery allegations. *See* R&R pp. 19-22. The initial contact and exchanges in the apartment entailed a hostile first reaction from Scales, before any inquiry about the robbery. When the detective then identified himself as a police officer and explained his presence, Scales ordered him out of the house, saying "a lot of things" and using profanity. The officer testified he gave Scales an opportunity to tell him what happened, but Scales declined to talk to him. The detective testified he arrested Scales, Bryant, and the other woman before leaving the apartment. That testimony leaves little doubt that at least through the time Scales was telling the officers to leave and declining to talk about

---

[3] Scales also argues the state court ruling was "wrong," a standard not adequate to afford federal habeas relief. Only if the state courts were "objectively unreasonable" in the fact finding will the finding be disturbed. Williams, 529 U.S. at 411; Andrade, 538 U.S. at 75-76.

1    the reasons the officers said they were there, he believed he had the right to have them leave, did not

2    consider himself in custody, and had not been formally arrested or read his rights.

3         The state appellate court reasoned:

4         The prosecutor emphasized that her questions were directed to
          [Petitioner]'s statements made while he was yelling and talking to the
5         detective.  It is reasonable to infer that Detective Williams gave
          [Petitioner] his "opportunity" to explain the situation at the time he was
6         acting hostile, before [Petitioner] told him to get out of his house.  We
          reach the same conclusion from the detective's testimony that
7         [Petitioner] understood, but inappropriately responded to his questions
          by telling him to get out of his house.  This testimony would indicate
8         any possible questions asked by the detective were asked before
          [Petitioner] demanded he leave and before the arrest, which occurred
9         before they left the apartment.  Thus, because the prosecutor's inquiry
          was directed to [Petitioner]'s *pre*-Miranda statements or silence, the
10        first component of a Doyle violation cannot be met.

11   R&R 23:2-10.

12        This court finds the state courts' determination of this issue was reasonable, based on the record

13   and the reviewing court's articulated analysis.  As no unreasonable factual determination appears, and

14   as the result is thus not contrary to nor an unreasonable application of Doyle, the Petition is denied on

15   this theory.

16   **IV.    CONCLUSION AND ORDER**

17        For all the foregoing reasons, **IT IS HEREBY ORDERED** the Report And Recommendation

18   this habeas Petition be denied in its entirety with prejudice is **ADOPTED**, the Petition is **DENIED**,

19   and judgment shall be entered accordingly.

20        **IT IS SO ORDERED**.

21   DATED:  February 1, 2007

22

23        **HONORABLE LARRY ALAN BURNS**
          United States District Judge

24

25

26

27

28